IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ANDREW BRANCH,[1] | § | |
| | § | |
| Respondent Below-Appellant, | § | No. 289, 2016 |
| | § | |
| | § | |
| v. | § | Court Below—Family Court |
| | § | of the State of Delaware, |
| DIVISION OF FAMILY SERVICES and COURT APPOINTED SPECIAL ADVOCATE, | § | in and for Sussex County |
| | § | File No. CS15-05-01TS |
| | § | Petition No. 15-12929 |
| | § | |
| Petitioners Below-Appellees. | § | |
| | § | |

Submitted: October 20, 2016
Decided: January 9, 2017

Before **VALIHURA**, **VAUGHN**, and **SEITZ**, Justices

# **O R D E R**

This 9th day of January 2017, upon consideration of the appellant's brief filed under Supreme Court Rule 26.1(c), his attorney's motion to withdraw, and the responses filed by the Division of Family Services ("DFS") and the Court Appointed Special Advocate ("CASA"), it appears to the Court that:

(1)     On May 13, 2016, the Family Court terminated the parental rights of the respondent-appellant, Andrew Branch ("the Father"), in his two minor children,

---

[1] The Court previously assigned a pseudonym to the appellant pursuant to Supreme Court Rule 7(d).  The Court also has assigned pseudonyms to the children in this Order.

Ashley (born September 6, 2013) and Grace (born August 21, 2014). This is the Father's appeal from the termination of his parental rights.[2]

(2) The Father's appointed counsel on appeal has filed an opening brief and a motion to withdraw from representation under Supreme Court Rule 26.1(c). Counsel asserts that she has conducted a conscientious review of the record and the relevant law and has determined that the appeal is wholly without merit. Under Rule 26.1(c)(i), however, counsel has identified one arguable claim for the Court to consider. By letter, counsel informed the Father of the provisions of Rule 26.1(c) and provided him with a copy of the motion to withdraw and the accompanying brief. Counsel informed the Father that he could submit in writing any additional points for the Court's consideration on appeal. Although he orally stated his intention to do so, the Father failed to submit any additional points in writing for counsel to include with the Rule 26.1(c) brief. DFS and the CASA each have filed a response to counsel's Rule 26.1 brief and have moved to affirm the Family Court's judgment.

(3) The record reflects that, on December 20, 2013, DFS was granted emergency custody of Ashley, who was then three-months-old. The Family Court found Ashley to be dependent in her parent's care because of the Father's incarceration, domestic violence issues, and substance abuse issues and because of

---

[2] The girls' mother voluntarily consented to the termination of her parental rights and is not a party to this appeal.

2

the Mother's homelessness, mental health issues, and substance abuse issues. The Father, through his court-appointed counsel, waived both the preliminary protective hearing on December 31, 2013 and the adjudicatory hearing on January 27, 2014 and stipulated to Ashley's dependency due to the Father's incarceration. At the February 24, 2014 dispositional hearing, the Family Court approved the Father's reunification case plan, which required the Father, among other things, to maintain employment and housing, to attend scheduled visitation with Ashley, and to receive evaluations for domestic violence, substance abuse, and mental health issues and follow any recommendations for treatment.

(4) On May 19, 2014 and August 4, 2014, the Family Court held two review hearings. Although the Father had made some progress toward his case plan, the Family Court found that it was in Ashley's best interests to remain in DFS' custody. The Family Court held a supplemental hearing on August 18, 2014 to determine if the Father's domestic violence counseling satisfied the requirement of his case plan that he complete anger management counseling. The Family Court concluded that it did not. By the time of that hearing, the Mother had already informed the Family Court of her intention to consent to termination of her parental rights.

(5) On August 25, 2014, DFS was granted emergency custody of Grace, who was born on August 21, 2014. After his paternity was established, the Father

3

waived his preliminary protective hearing and stipulated to a finding of probable cause that Grace was dependent in his care. On October 27, 2014, the Family Court held an adjudicatory hearing regarding Grace and a third review hearing regarding Ashley. The Father contested that Grace would be dependent in his care. After consideration of the evidence, the Family Court found that the Father had not completed the elements of his case plan that required evaluation and counseling for domestic violence, anger management, and substance abuse issues. The trial court concluded that both girls would be dependent in the Father's care and that it was in their best interests to remain in DFS' custody. At the December 8, 2014 dispositional hearing, the Father received his case plan for Grace, which required him, among other things, to complete intensive outpatient drug treatment, one-on-one domestic violence counseling, and anger management counseling.

(6) In December 2014 and January 2015, respectively, DFS filed motions seeking to establish permanency plans with respect to each girl. In February 2015, the petitions were consolidated. In March 2015, the Family Court deferred ruling on the permanency plans for either child and granted the parents an additional 90 days to work toward completing their respective case plans. In June 2015, the Family Court held a consolidated hearing on DFS' permanency petitions. The Family Court found that the Father's continued actions relating to domestic violence and his failure to complete the required counseling indicated that the

4

Father was unlikely to change his conduct and complete his plan. Therefore, the Family Court changed the goal for both girls from reunification to termination of parental rights/adoption.

(7) Thereafter, the parental grandmother filed a petition for guardianship, which was supported by the Father but was opposed by the Mother and the CASA. After a hearing, the Family Court denied the petition for guardianship. At that time, the Mother indicated her consent to termination of her parental rights. On March 7, 2016, the Family Court held a termination of parental rights hearing as to the Father. The Father appeared at the courthouse but left before the hearing started. Although his then-counsel requested to withdraw his appearance because the Father was not there to state his position on the TPR petition, the Family Court asked counsel to proceed with the hearing as if the Father objected to the petition.

(8) The Family Court heard from multiple witnesses at the TPR hearing, including the children's foster care supervisor, a DFS caseworker, Ashley's therapist, the Father's domestic violence counselor, and the Father's substance abuse counselor. The testimony of the State's witnesses established that, although the Father recently had some appropriate visits with the children, he had not made significant progress toward other elements of his case plan because he had failed to complete individual domestic violence counseling and intensive substance abuse counseling. The testimony further established that the girls had come into DFS'

custody as infants and each child had lived with her respective foster family throughout that period. Each girl had closely bonded with her respective foster family, and each foster family wished to adopt their foster daughter.

(9) In its written opinion, the Family Court found clear and convincing evidence that the children had come into DFS' care as infants and had remained in DFS' care for more than six months,[3] that DFS had made reasonable efforts to reunify the Father with the children, that the Father had failed to plan adequately for the children's needs,[4] and that termination of the Father's parental rights was in the children's best interests.[5] In making the determination that termination was in the children's best interests, the Family Court considered all of the factors set forth in 13 *Del. C.* § 722 and found that the evidence as to each factor weighed in favor of terminating the Father's parental rights.

(10) The Father has not raised any challenge to the Family Court's decision on appeal. Appointed counsel has set forth one arguable issue, namely that DFS unreasonably delegated its reunification efforts and case supervision to a non-party parent aide, who did not reasonably assist the Father in completing his case plan in a way that accounted for the Father's diagnosed cognitive deficit of "mild mental retardation."

---

[3] 11 *Del. C.* § 1103(a)(5)a1.

[4] *Id.* § 1103(a)(5).

[5] *Id.* § 1103(a).

(11)   In response, DFS argues that there is more than sufficient evidence in the record to reflect that DFS appropriately monitored all of the services being provided to the Father, that the services were provided to the Father in a manner that he could understand despite his cognitive limitations, and that the Father did understand and was capable of fulfilling his case plan despite his limitations.

(12)   On appellate review of a termination of parental rights, this Court is required to consider the facts and the law as well as the inferences and deductions made by the Family Court.[6] We review legal rulings *de novo*.[7] We conduct a limited review of the factual findings of the trial court to assure that they are sufficiently supported by the record and are not clearly wrong.[8] If the trial judge has correctly applied the law, our review is limited to abuse of discretion.[9]

(13)   The statutory procedure for terminating parental rights requires two separate inquires.[10] First, the court must determine whether the evidence presented meets one of the statutory grounds for termination.[11] Second, the court must determine whether termination of parental rights is in the best interest of the

---

[6] *Scott v. DSCYF*, 2012 WL 605700 (Del. Feb. 27, 2012) (citing *Wilson v. Div. of Fam. Services*, 988 A.2d 435, 439-40 (Del. 2010)).

[7] *Wilson v. Div. of Fam. Services*, 988 A.2d 435, 440 (Del. 2010).

[8] *Id.*

[9] *Powell v. DSCYF*, 963 A.2d 724, 731 (Del. 2008).

[10] *Shepherd v. Clemens*, 752 A.2d 533, 536-37 (Del. 2000).

[11] *Id.* at 537. *See also* 13 *Del. C.* § 1103(a)(1-8) (listing the grounds for termination of parental rights).

child.[12] When the statutory basis for termination of parental rights is failure to plan adequately for the child's physical, mental, or emotional needs,[13] there must be proof of a least one additional statutory factor[14] and proof that DFS made *bona fide* reasonable efforts to reunify the family and preserve the family unit.[15] All of these requirements must be established by clear and convincing evidence.[16]

(14)   In this case, the Family Court found clear and convincing evidence that the Father's parental rights should be terminated on the statutory basis of failure to plan adequately for the children's needs.[17] This Court has carefully reviewed the record, including all of the hearing transcripts, the Family Court's decision, and the positions of the parties. Contrary to the Father's counsel's arguable point on appeal, the record reflects sufficient evidence to support the Family Court's finding that DFS made reasonable efforts to reunify the Father with the children.  We conclude there is ample evidence on the record to support the Family Court's termination of the Father's parental rights on the statutory basis that he failed to plan for the children and that termination was in the children's best

---

[12] 13 *Del. C.* § 722(a)(1)-(8) (listing factors to be considered when determining the best interest of the child).

[13] *Id.* § 1103(a)(5).

[14] *Id.*  § 1103(a)(5)a,b (listing additional factors).

[15] *In re Hanks*, 553 A.2d 1171, 1179 (Del. 1989).

[16] *Powell v. DSCYF*, 963 A.2d 724, 731 (Del. 2008).

[17] 13 *Del. C.* § 1103(a)(5).

interest. We find no abuse of discretion in the Family Court's factual findings, and no error in its application of the law to the facts.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED. The motion to withdraw is moot.

BY THE COURT:


/s/   James T. Vaughn, Jr.
Justice